IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff/Respondent, | § | |
| | § | |
| V. | § | CR. No. C-03-94 |
| | § | C.A. No. C-05-490 |
| FRANK DAVIS, | § | |
| | § | |
| Defendant/Movant. | § | |

## ORDER SETTING EVIDENTIARY HEARING

Pending before the Court is Frank Davis' ("Davis") motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, which was filed by and through counsel. (D.E. 62).[1] The government filed its response and motion to dismiss on December 29, 2005 (C.A. NO. C-05-490, D.E. 2). Davis filed a brief response to the motion to dismiss on February 24, 2006, which the Court struck because it did not contain a certificate of service. (D.E. 67, 68). Davis re-filed the reply on March 17, 2006, with a certificate of service, and the Court has also considered it. (D.E. 69).

For the reasons set forth below, the Court withholds ruling at this time on Davis' motion. However, as to his claim that he was denied effective assistance of counsel because his counsel underestimated his possible sentence and failed to advise him about the possibility that "relevant conduct" could increase his sentence, the Court orders an evidentiary hearing.

## I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255.

---

[1] Docket entries refer to the criminal case, Cr. No. C-03-94, unless otherwise noted.

## II. FACTUAL BACKGROUND AND PROCEEDINGS

**A.    SUMMARY OF OFFENSE[2]**

On October 29, 2002, a Confidential Informant ("CI") was apprehended in Louisiana with 51 kilograms of marijuana in a black duffel bag, a suitcase and a blue duffel bag with the lettering "blue angels" on the side.[3] The CI informed law enforcement officials that Davis had told the CI that Davis knew two Hispanic males who could help the CI make money. Davis brought the two Hispanic males to a meeting with the CI. The CI said the two Hispanic males offered to pay him if he would transport marijuana for them, and that he was given three bags containing the marijuana. He was to be paid $5,600 for transporting two of the bags to Georgia and $6,000 for transporting one bag to Michigan. During his trip, the CI had several conversations by cell phone with Davis, which was confirmed by telephone records. Additionally, Davis' business card with his cell number was provided by the CI. Debriefings from Davis, individual #1 ("I1") and another confidential informant ("CI2") corroborate that Davis committed this offense along with the CI.

On February 18, 2002, Davis spoke to a DEA agent about his involvement with a drug trafficking organization. He relayed that he had been finding drivers to transport loads of marijuana for I1 and individual #2 ("I2"). These two individuals paid Davis $700 for every 500 pounds of marijuana transported by Davis' drivers. Davis said he transported a total of three loads of marijuana for I1 and I2 after being released from the custody of the Bureau of Prisons on April 7, 2000, one of which was the load seized from the CI.

Additionally, Davis explained that he was transporting marijuana to Akron, Ohio for two other

---

[2] The offense description is from the Presentence Investigation Report ("PSR") at ¶¶ 4-7.

[3] Testimony at trial established that Davis was associated with a softball team called the blue angels.

individuals, I3 and I4. In November 2002, Davis hired a driver to transport 150 pounds of marijuana to Akron, Ohio. He was provided the marijuana and payment by I4 in Mission, Texas and the delivery was to be made to I3 in Akron. Instead, however, Davis advised the driver to deliver the load to I1 in Georgia. Approximately 94 pounds of the 150 pounds were given to I1 and the remaining 56 pounds were delivered to I3. I1, who was also a source of marijuana for Davis, was arrested shortly thereafter and Davis was unable to obtain another 94 pounds to give I3. Despite this, he promised I3 he would deliver the marijuana to Ohio. When he was unable to fulfill his promise, he contacted the DEA for assistance.

Davis suggested that the DEA provide the marijuana to I3 in a controlled delivery. The DEA agreed and agents conducted a controlled delivery of 150 pounds of marijuana and an individual was arrested, but the individual has not cooperated with law enforcement. Debriefings from the defendant, I1 and CI2 corroborate that Davis was trafficking drugs along with I1. During the bench trial, Davis admitted to being guilty of conspiring with I3 and that he stole marijuana from I3. However, Davis testified that he was not involved with the load seized in Louisiana and that he was not involved in drug trafficking with I1.

**B.    CRIMINAL PROCEEDINGS**

On April 9, 2003, Davis was charged as the sole defendant in a two-count indictment. Specifically, the indictment charged him with: (1) knowingly and intentionally possessing with intent to distribute approximately 47 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D) ("Count One"); and (2) knowingly and intentionally conspiring to possess with intent to distribute approximately 50 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. ("Count Two"). (D.E. 1). Davis waived his right to a jury trial, as did the government. (D.E. 26, 30). After a suppression hearing, in which the Court denied Davis' motion to

suppress certain statements he had made to DEA agents, the case was tried as a bench trial on June 23, 2003, and June 24, 2003. (D.E. 31, 35). The Court returned a guilty verdict as to both counts on June 24, 2003. (D.E. 35, 39). Davis was represented from his arraignment through trial by appointed counsel, David Diaz.

After the trial, Davis moved to substitute attorney John Gilmore in place of Diaz, a motion the Court granted. (D.E. 40, 41). Sentencing occurred on October 22, 2003. The PSR grouped the two counts for purposes of determining offense level, and determined that Davis' base offense level was 26. It added three levels for his role as a manager or supervisor in the offense, pursuant to U.S.S.G. § 3B1.1(b). It also added two levels for obstruction of justice pursuant to U.S.S.G. § 3C1.1, resulting in a total offense level of 31. (PSR at ¶¶ 15-24). Davis' criminal history category was III. (PSR at ¶¶ 25-31, 64-66). The resulting guideline range was 135 to 168 months, although the maximum term of imprisonment for Count One was 120 months. (PSR at ¶ 67).

The Court sentenced Davis to 120 months in the custody of the Bureau of Prisons on Count One and 140 months on Count Two, to run concurrently. It also sentenced him to a four-year supervised release term on Count One, and a six-year term on Count Two, to run concurrently. Finally, it imposed a $50 fine on each count, and a $100 special assessment on each count. (D.E. 50; D.E. 57, Sentencing Transcript ("S. Tr.") at 27-29). Judgment was entered on October 28, 2003. (D.E. 51). Davis timely appealed (D.E. 52), but his appeal was initially dismissed for want of prosecution, based on Davis' failure to timely make arrangements with the Court reporter. (D.E. 54). The appeal was later reinstated (D.E. 59), and the Fifth Circuit affirmed the judgment of this Court in a per curiam opinion issued on September 30, 2004. (D.E. 60, 61). Davis timely filed the instant § 2255 motion on September 29, 2005. (D.E. 62).

### III. MOVANT'S ALLEGATIONS

Davis' motion asserts two grounds for relief. First, Davis argues that he was denied effective assistance of counsel because of a number of different alleged failures by his court-appointed attorney, David Diaz. Primarily, he contends that his counsel was not prepared for trial. In support of this claim, he offers the following arguments:

> 1. His attorney did not have police reports, summaries, or memoranda of what one witness, Bruce Wright, was going to testify about until the day of trail, and did not have reports from two police officers from the State of Louisiana and one officer from Akron, Ohio. (D.E. 62, Ground One at ¶ 1);
>
> 2. His attorney did not spend sufficient time meeting with defense witnesses or preparing them for trial, and did not call additional unspecified witnesses, which caused Davis to feel compelled to take the stand on his own behalf. (D.E. 62, Ground One at ¶¶ 2, 5);
>
> 3. Because of his attorney's lack of preparation, Davis had to tell his attorney what questions to ask. (D.E. 62, Ground One at ¶ 6); and
>
> 4. His attorney failed to subpoena his medical records prior to trial, in order to prove he was suffering from depression and was on prescribed medication, despite Davis' request that he do so. (D.E. 62, Ground One at ¶ 8).

In a related argument, Davis argues that his attorney knew he wanted to fire him a week before trial because of the poor preparation, but that his attorney did not file a motion for continuance, "nor did he make it possible for [Davis] to hire the attorney of [his] choosing." (D.E. 62, Ground One at ¶ 7).

He also makes two additional allegations of ineffective assistance. First, he claims that his attorney advised him and his sister that he was "looking at" only 4 to 6 years of incarceration "tops," and failed to discuss with him the concept of "relevant conduct" and the federal sentencing guidelines. Second, he argues that his attorney disclosed confidential information to the prosecutor. Davis' second ground for relief is that his sentence violates the principles set forth in Blakely v. Washington,

124 S. Ct. 2531 (2004) and extended to the federal sentencing guidelines in United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005). He argues that the Court found facts supporting "relevant conduct" at sentencing that increased his sentence, and that, by doing so, the Court violated his constitutional right to a jury trial.

## IV. DISCUSSION

Davis' first claim is properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001).

If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"), cert. denied, 514 U.S. 1071 (1995); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

As noted, one of Davis' claims is that his attorney failed to inform him of his true sentencing exposure, but instead told him he would receive four to six years "tops." He also alleges that Diaz made the statement in the presence of Davis' sister.

In responding to his § 2255 motion, the government's entire response to this claim is as follows:

6

> This allegation (like all others) is unsupported. See United States v. Flores, 135 F.3d 1000 (5th Cir. 1998) ("With respect to his claim of ineffective assistance of counsel, Flores fails to make particularized allegations or to identify probative evidence in the record tending to support his allegations. Having reviewed the record, we find no evidence tending to support Flores' claim, and accordingly find it to be fatally conclusory and without merit.") However, even if true, these allegations are meaningless. Failure to explain the guidelines may have some meaning in considering the voluntariness of a guilty plea, but petitioner went to trial. Moreover, count 2 was a conspiracy count with a higher penalty range to incorporate the additional drugs being considered. No deficiency by trial counsel is indicated.

(C.A. No. C-05-490, D.E. 2 at 9).

The foregoing response ignores the fact that Davis' motion was sworn by him to be true, and that he identifies both a specific statement made to him by counsel, as well as a third-party witness to that alleged statement. The government has failed to provide an affidavit from Davis' counsel, David Diaz, that responds to the allegations. Thus, there is no sworn testimony in the record to refute Davis' claim. Moreover, there is some support for Davis' claim in the trial record. Specifically, after the Court found him guilty, the Court stated that it assumed Davis was aware of the effect of the notice of enhancement filed prior to trial. The Court asked Diaz whether he had explained the enhancement to Diaz. Mr. Diaz stated that he had explained the enhancement, but that he did not believe he had explained the fact that the maximum possible sentence would be increased as a result of the enhancement.[4] (D.E. 56, Trial Transcript, Vol. 2, at 98-99).

Additionally, the government's argument that failure to explain the guidelines is irrelevant in cases where the defendant goes to trial, is an incorrect statement of the law. As the Fifth Circuit has

---

[4] Without the enhancement, the maximum possible sentences would have been 5 years as to Count 1 and 20 years on Count 2. With the enhancement, the maximums were 10 years and 30 years, respectively.

7

clearly stated:

> Failing to properly advise the defendant of the maximum sentence that he could receive falls below the objective standard required by Strickland. When the defendant lacks a full understanding of the risks of going to trial, he is unable to make an intelligent choice of whether to accept a plea or take his chances in court. ... By grossly underestimating [the defendant's] sentencing exposure ..., [counsel] breache[s] his duty as a defense lawyer in a criminal case to advise his client fully on whether a particular plea to a charge appears desirable.

United States v. Grammas, 376 F.3d 433, 436-37 (5th Cir. 2004) (internal citations omitted) (alterations in original).

In this case, the record does not clearly establish that Diaz was not deficient in advising Davis about his sentencing exposure. As described above, Davis has sworn that Diaz told him he would receive six years "tops" and no contrary affidavit was provided by the government. Diaz also appeared to admit in open court that he did not explain the full effect of the enhancement to his client. Thus, there is some support in the record for Davis' claim that his counsel misadvised him about his possible sentence.

The record also is unclear as to whether or not Davis can establish the prejudice prong of his first claim. The Grammas court noted that "any amount of actual jail time has Sixth Amendment significance." 376 F.3d at 438. Thus, if Davis would have received a lesser punishment had his counsel not been deficient, then he can establish prejudice. See id.

The current record does not reflect what plea agreement was offered or discussed, if any, nor does it definitively show whether Davis would have pleaded guilty, had he known of his true sentencing exposure. See, e.g., Grammas, 376 F.3d at 438-39 (it was a question of fact whether the defendant would have pleaded guilty had he been properly counseled as to his potential punishment); United States v. Herrera, 412 F.3d 577, 582 (5th Cir. 2005) (noting that the evidentiary hearing would

assist the district court in determining whether the defendant relied on his attorney's alleged misrepresentations in rejecting the government's plea offer). Notably, however, had Davis pleaded guilty, he likely would have received some credit for acceptance of responsibility, resulting in a lower guideline range. See Grammas, 376 F.3d at 439 n.5. Thus, there is also the potential that Davis suffered prejudice.[5]

In short, the current record does not allow the Court to resolve this claim. Thus, the Court concludes Davis is entitled to an evidentiary hearing as to whether or not his counsel was deficient as to this specific ground. See Rule 8, RULES GOVERNING SECTION 2255 PROCEEDINGS FOR THE UNITED STATES DISTRICT COURTS; see also Herrera, 412 F.3d 577 (remanding § 2255 motion for evidentiary hearing before the district court where the record was unclear as to whether attorney improperly advised defendant of his maximum sentencing exposure).

If the Court grants him relief on this claim, one possible remedy may be to permit Davis to plead guilty and to resentence him. If that occurs, his remaining claims will be rendered moot. Accordingly, the Court will not address those claims at this time. If, at the conclusion of the hearing, the Court denies relief on Davis' first claim, it will then address his remaining grounds for relief.

## V. CONCLUSION

For the foregoing reasons, the Court will hold an evidentiary hearing on the limited issue of whether Davis was denied effective assistance of counsel due to his counsel's alleged failure to inform him of his possible sentencing exposure. **The evidentiary hearing is set for 10:00 a.m. on June 15, 2006.**

---

[5] Davis does not explicitly allege in his brief § 2255 motion that he would have pleaded guilty instead of proceeding to trial, had he known of his true sentencing exposure. In order to show prejudice, however, he would have to show that he would have pleaded guilty, had he known of his true sentencing exposure.

Davis is entitled to be represented by counsel at the hearing. <u>See</u> Rules Governing Section 2255 Motions 8(c). Because he already is represented by retained counsel in these proceedings, it is not necessary to appoint new counsel for him.

It is so ORDERED this 13th day of April 2006.

_____
Janis Graham Jack
United States District Judge