IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff/Respondent, | § | |
| | § | |
| V. | § | CR. No. C-03-94 |
| | § | C.A. No. C-05-490 |
| FRANK DAVIS, | § | |
| | § | |
| Defendant/Movant. | § | |

**ORDER GRANTING IN PART AND DENYING IN PART AS MOOT
MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE**

Pending before the Court is Movant Frank Davis' ("Davis") motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255, filed with the assistance of counsel. (D.E. 62).[1] After reviewing the government's response and motion to dismiss (C.A. No. C-05-490, D.E. 2), as well as Davis' reply thereto (D.E. 69), the Court set the matter for an evidentiary hearing. (See D.E. 70). The evidentiary hearing was held on August 25, 2006. For the reasons set forth on the record at the conclusion of the hearing, and for the reasons set forth herein, Davis' § 2255 motion is GRANTED IN PART, and Davis' conviction and sentence are hereby vacated.

**I. JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255.

**II. MOVANT'S ALLEGATIONS**

As noted in the order setting the evidentiary hearing, Davis' § 2255 motion alleged that his

---

[1] Unless otherwise noted, docket entries refer to the criminal case, Cr. No. C-03-94.

1

trial counsel, David Diaz, was ineffective due to numerous alleged errors made at trial. (See D.E. 70 at 5). He also alleged that his attorney was ineffective because he had failed to adequately inform Davis of his sentencing exposure if he went to trial. Finally, Davis argued that his sentence violated the principles set forth in United States v. Booker, 543 U.S. 220 (2005).

### III. FACTUAL BACKGROUND AND PROCEEDINGS

The offense conduct and procedural history in Davis' criminal proceedings are set forth in detail in the Court's April 13, 2006 order setting the evidentiary hearing. (D.E. 70). Familiarity with that order is assumed, and the Court will not repeat that detailed background here. The Court notes, however, that Diaz was indicted and found guilty after a bench trial of two counts: (1) knowingly and intentionally possessing with intent to distribute approximately 47 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D) ("Count One"); and (2) knowingly and intentionally conspiring to possess with intent to distribute more than 50 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. ("Count Two"). (D.E. 1).

At sentencing, the Court found that Davis was responsible for 324 kilograms of marijuana. Thus, his base offense level was determined to be 26. He received a two-level upward adjustment for obstruction of justice, and a three-level upward adjustment for his role in the offense, for a total offense level of 31. (PSR at ¶¶ 15-24). Davis' criminal history category was III. (PSR at ¶¶ 25-31, 64-66). The resulting guideline range was 135 to 168 months, although the maximum term of imprisonment for Count One was 120 months. (PSR at ¶ 67). The Court sentenced Davis to 120 months in the custody of the Bureau of Prisons on Count One and 140 months on Count Two, to run concurrently.

Davis filed his timely § 2255 motion on September 29, 2005. (D.E. 62). As noted, the Court

ordered an evidentiary hearing to resolve whether Davis' trial counsel, Diaz, accurately informed him of his sentencing exposure prior to trial.

At the August 25, 2006 hearing, the government called as witnesses both Diaz and Robert Galvan, the former AUSA who prosecuted this case. John Gilmore, the attorney for Davis in these § 2255 proceedings, also called Davis to testify.

### A.     Testimony of Robert Galvan

Galvan testified that shortly after the indictment had been issued charging Davis, Galvan and his case agent met with Davis and Diaz. Galvan went to the meeting hoping to get Davis to cooperate against Ramiro Gonzalez, who was about to be sentenced. Galvan said he explained to Davis at that time that if he cooperated, the government would ask the Court to lower his sentence pursuant to U.S.S.G. § 5K1. Galvan stated that he believed at that time that Davis was going to cooperate with the government, and that Davis did debrief, although he could not recall the details of the debriefing. He also testified that Davis did not seem to have any problems understanding that if he cooperated, he was likely to get a lesser sentence.

Shortly after the meeting, Galvan discussed the terms of a possible plea agreement with Diaz. Specifically, Galvan told Diaz that he would allow Davis to plead guilty to one of the two counts and would move to dismiss the other, although Galvan could not recall which count was going to be the plea and which was going to be the one dismissed. At the hearing, he said it very well may have been Count One, but that he could not recall. He also explained that he would not seek an enhanced sentence under 21 U.S.C. § 851(a) against Davis if he pleaded guilty, but that if he went to trial, he would file the notice of enhancement.[2] Additionally, Galvan told Diaz that if Davis continued to

---

[2] Title 21, U.S.C. § 841(b) enumerates the penalties for the drug offenses set forth in § 841(a), and provides for increased penalties where a defendant has one or more convictions of a specified type. In Davis'

cooperate, the government would move for a downward departure at sentencing. Galvan further testified that he did not recall whether he had given Diaz a written plea agreement, but that he may have. He was certain that he had discussed with Diaz the terms of the agreement orally shortly after the debriefing. The next time that Galvan spoke with Diaz, however, Diaz told him that Davis did not want to cooperate with the government, and that he wanted a trial.

**B.    Testimony of David Diaz**

Diaz testified that has been practicing as an attorney since 1975. He testified that, within days of being appointed, he went to see Davis in jail, and that he explained to him generally about how the sentencing guidelines worked, as well as explaining the concepts of safety valve relief, relevant conduct, and reductions for substantial assistance. He claims that he told Davis he probably faced a sentence of 63 to 78 months if he went to trial. According to Diaz's testimony, he never discussed with Davis, at any time prior to trial, that his sentence could be enhanced as a result of his prior drug conviction. Indeed, the government admitted at the evidentiary hearing that it did not believe that Davis ever had the opportunity to discuss the possibility of, or consequences of, the enhanced sentence with his attorney. Significantly, Diaz also admitted that he never changed his estimate of a likely 63 to 78 month sentence at any point before trial, and never conveyed any other estimate to Davis.

Diaz also testified that, from the beginning of his representation of Davis, Davis wanted to go to trial and did not want to plead guilty. Davis was also insistent that he receive a bench trial, rather

---

case, 21 U.S.C. § 841(b)(1)(D) increased the statutory maximum penalty for Count One from 5 to 10 years, because of his previous felony drug conviction. Similarly, the maximum punishment on Davis' conspiracy count was increased from 20 years to 30 years.  See 21 U.S.C. § 841(b)(1)(C); PSR at p. 1; id. at ¶¶ 42-43.  These increased penalties cannot be applied, however, unless the government gives notice prior to trial or before entry of a guilty plea of its intent to seek the enhanced penalty. The requirements for the notice are set forth in Section 851. In this case, the government gave proper notice under Section 851 prior to trial. According to Galvan, however, if Davis had pleaded guilty, the government would not have filed the notice required for the enhanced penalties.

than a jury trial. Apparently, Davis was convinced that certain witnesses would not appear at trial, even though Diaz told him that those witnesses would be present at trial. Diaz also testified that he explained to Davis that he could get less time if he pleaded guilty than if he went to trial, including explaining the concept of acceptance of responsibility, but that Davis nonetheless wanted a trial.[3]

**C.    Testimony of Frank Davis**

Davis testified very briefly at the hearing. He stated that, had he known of the possible sentence he could receive, he would have instead pleaded guilty, rather than going to trial.

## IV.  ANALYSIS

**A.    Ineffective Assistance of Counsel**

As noted in its order setting the evidentiary hearing, to succeed on his claim of ineffective assistance, Davis must establish both parts of the two-part test set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). That is, he must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that he must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001).

**1.    Deficiency**

In the context of a claim that an attorney failed to adequately advise a defendant of the risks of going to trial, versus accepting a plea agreement, an attorney performs deficiently if he "fails to

---

[3] The government devoted a large portion of its examination of Diaz to eliciting testimony that Davis did not wanted to plead guilty. From this, the government argued that Diaz could not show prejudice because there was insufficient evidence to show he would have pleaded guilty. The Court disagrees, as discussed infra at 7-9.

5

properly advise the defendant of the maximum sentence that he could receive." United States v. Grammas, 376 F.3d 433, 436-37 (5th Cir. 2004). Additionally, if defense counsel grossly underestimates a defendant's sentencing exposure, he breaches his duty "to advise his client fully on whether a particular plea to a charge appears desirable." Id.

Diaz admitted that he never informed Davis of the effect of the enhancement, or the fact that it would increase the statutory maximums for the offense. Additionally, Diaz admitted that he never changed his initial sentence estimate of 63 to 78 months if Davis went to trial.[4] Davis actually received sentences of 120 months and 140 months on Counts One and Two, respectively. Thus, his counsel's "estimates" in this case were almost half of what his actual sentencing exposure was. Additionally, his guideline range on Count Two went as high as 168 months, which is 90 months longer than he was informed would be his likely exposure. The Court finds that this is a gross underestimation of Davis' sentencing exposure and that his counsel was therefore deficient. See Grammas, 376 F.3d at 435-437 (defense counsel's performance was deficient where he advised client his exposure was 6 to 12 months, and the correct sentencing guideline range was 70 to 87 months); United States v. Herrera, 412 F.3d 577, 581 (5th Cir. 2005) ("An attorney who underestimates his client's sentencing exposure by 27 months performs deficiently because he does not provide his client with the information needed to make an informed decision about accepting a plea offer or going to

---

[4] Diaz was not asked during his testimony, and did not explain how he arrived at the guideline estimate of 63 to 78 months. Diaz stated that he assumed, however, that Davis would have a criminal history category of III. In order for a criminal history category of III to result in a guideline range of 63 to 78 months, the offense level would have to be 24. This would have been Davis' total offense level if he had gone to trial and been held responsible for between 50 and 100 kilograms of marijuana (assuming there had been no adjustments for his role in the offense or for obstruction of justice). In fact, he was held responsible for 327 kilograms of marijuana, and those two adjustments occurred. Notably, Galvan testified that information on all of the loads that were used to find a total of 327 kilograms were referenced in the file prior to trial. Thus, there is no reason why Diaz would not have known of those additional kilograms prior to advising Davis as to whether to accept the government's plea offer.

trial."); see also United States v. Day, 969 F.2d 39, 45 (3d Cir. 1992) (if defense counsel advised the defendant his sentencing exposure was approximately eleven years and, in fact, he could have received a 22-year sentence, that could constitute deficiency).

### 2. Prejudice

Having found that Davis' counsel was deficient, the Court must next determine whether he suffered any prejudice. In this case, a finding of prejudice requires the Court to determine whether there was a reasonable probability that: (1) Davis would have pleaded guilty if he knew of the true criminal penalty he faced; and (2) he would have received a lesser sentence then he did. Grammas, 376 F.3d at 438.

As to the first finding, Davis testified at the hearing that he would have pleaded guilty if he knew of his true sentencing exposure. As it stated at the hearing, the Court finds no reason to disbelieve him. His attorney told him he faced a 63 to 78-month sentence if he went to trial, and his attorney did not change that estimate at any point prior to trial. Davis was sentenced, however, to 120 months on Count One and 140 months on Count Two, to run concurrently. (D.E. 50). Had he been told that his sentencing exposure after a trial would be 140 months, as opposed to 78, the Court finds credible Davis' testimony that he would have pleaded guilty and gone to trial. Indeed, it is intuitive that a defendant might be willing to take his chances at trial if he believed he would be sentenced to 78 months, but be unwilling to take the chance of conviction at trial if the resulting sentence could be as high as 168 months, which was the top end of the guideline range for Davis. See Grammas, 376 F.3d at 438; Herrera, 412 F.3d at 581; see also Day, 969 F.2d at 45 (where defendant believed his sentence exposure was approximately eleven years and, in fact, he could have received a 22-year sentence, it is not "at all implausible" that the defendant would want to plead guilty, rather than risking

a trial).

The Court acknowledges that, although the Fifth Circuit does not appear to have addressed the issue, some other circuits have held that a petitioner's testimony that he would have pleaded guilty, standing alone, is insufficient for a district court to so find. See, e.g., Day, 969 F.2d at 45 (collecting authority and noting that the Sixth, Seventh, Eleventh Circuits have held that awareness of the plea offer and after-the-fact testimony concerning a desire to plead is insufficient evidence). On this issue, the Court agrees with the Second Circuit's analysis in United States v. Gordon, 156 F.3d 376, 381 (2d Cir. 1998), which held that the error in estimation itself may constitute sufficient objective evidence to confirm the defendant's testimony. See 156 F.3d at 381 (a great disparity between the actual sentencing exposure and the exposure represented by defendant's attorney, when coupled with a petitioner's statement concerning his intentions, provides sufficient evidence to support a finding of prejudice).

In this case, not only is there a great disparity between what Davis was told he would face if he proceeded to trial and what he actually faced, but there is also evidence that Davis initially cooperated with authorities, and, after indictment, debriefed and initially seemed willing to cooperate.[5] The Court finds that these facts, along with Davis' own testimony, show a reasonable probability that Davis would have pleaded guilty had he known of his true sentencing exposure.

Thus, the sole remaining question for the Court to answer is whether there is a reasonable probability that he would have received a different sentence had he pleaded guilty. It is clear that there is at least a "reasonable probability" that he would have received a lesser sentence had he

---

[5] Diaz testified repeatedly that Davis never expressed to him a desire to plead guilty, but had always insisted that he wanted a trial. Nonetheless, on cross-examination, Diaz conceded that Davis had debriefed for the purpose of cooperating fairly early on in the case. This tends to undermine any assertion that Davis was ***never*** interested in pursuing a guilty plea.

pleaded guilty. It is undisputed that, had Davis accepted the government's plea offer, the government would not have moved to enhance his sentence. Thus, the maximum time he would have faced had he pleaded guilty was five years (if he pleaded guilty to Count One and the other was dismissed) or twenty years (if he pleaded to Count Two).[6] Even assuming that he still was given upward adjustments for his role in the offense and for obstruction of justice, he could have received a three-level credit for acceptance of responsibility.[7] If that had occurred, his offense level would have been 28, instead of 31. A total offense level of 28 with a criminal history category of III would have resulted in a guideline range of 97 to 121 months on Count Two, and would have been limited to the statutory maximum of 60 months on Count One. Thus, instead of facing concurrent sentences of 120 and 140 months, respectively, he would have likely received 60 months and somewhere between 97 and 121.

Based on the foregoing, the Court finds that there is a reasonable probability that, but for his counsel's failure to accurately inform him of his true sentencing exposure, he would have pleaded guilty, and that he would have received a lesser sentence.

The government argued at the hearing that Diaz's failure to inform Davis of the enhancement

---

[6] Galvan could not recall which of the two counts he had offered to allow Davis to plead to, although he said it "very well may have" been Count One.

[7] Although it is the "extraordinary case," it is possible that a defendant who received an upward adjustment for obstruction of justice may nonetheless receive credit for acceptance of responsibility. See U.S.S.G. § 3E1.1, cmt 4 (conduct resulting in an obstruction of justice enhancement "ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct," except in "extraordinary cases").
   Moreover, here the obstruction of justice adjustment was based primarily, if not entirely, on Davis' testimony and conduct at the motion to suppress hearing and at trial. Had he pleaded guilty, these proceedings would not have taken place, and it is possible that he would not have received the upward adjustment for obstruction of justice. Accordingly, it is possible that had he been pleaded guilty, he would not have received an adjustment for obstruction or justice, but would have received a three-level credit for acceptance of responsibility. Had that occurred, his total offense level would have been 26, his criminal history category III, and his offense level for Count Two would have been 78-97 months.

9

did not have any effect in this case because he was convicted of both counts, and got less than twenty years. Put differently, the government argues that Davis knew he faced a maximum sentence of 20 years and he got less than 20 years. Thus, he suffered no prejudice because he was willing to proceed to trial where the maximum sentence was 20 years, and he got less than that. As an initial matter, this argument ignores the fact that Davis was offered a plea agreement that would require him to plead to only one count, and this count could have been the five-year maximum count. Moreover, the government's argument improperly analyzes Strickland's prejudice prong. The question is not whether the enhancement actually affected his sentence, but whether there's a reasonable probability he would have received a lesser sentence if he had pleaded guilty. The Court concludes that such a reasonable probability exists, for the reasons set forth supra at 8-9.

Accordingly, Davis has demonstrated both prejudice and deficiency and is entitled to some relief on this claim.

### 3. Proper Remedy

Davis and his current counsel, John Gilmore, have suggested that the proper remedy is to vacate Davis' sentence and conviction, and allow him to plead guilty. The Court agrees. The Supreme Court has instructed that the remedy for a Sixth Amendment violation "should be tailored to the injury suffered and should not unnecessarily infringe on competing interests." United States v. Morrison, 499 U.S. 361, 364 (1981); see also United States v. Carmichael, 216 F.3d 224, 226 (2d Cir. 2000) (remedy should be one "that as much as possible restores the defendant to the circumstances that would have existed had there been no constitutional error"); Day, 969 F.2d at 47 (discussing possible remedies).

In Day, the Third Circuit remanded the defendant's § 2255 motion for an evidentiary hearing

on his claim that counsel grossly underestimated his sentencing exposure. The appellate court also instructed the district court as to available remedies, were it to find a violation. It noted, though, that remedies imposed by other courts in similar cases included: (1) giving the defendant a second opportunity to accept the original plea agreement (akin to "specific performance" of the plea agreement); (2) merely allowing the parties to resume plea negotiations; and (3) requiring the reinstatement of the plea offer unless the government could show that its withdrawal of the offer was not vindictive. 969 F.2d at 47. The Day court did not dictate which of these possible remedies the district court should employ, but only "observe[d]" that "the district court would have considerable discretion in fashioning a remedy appropriate under the circumstances today." Id.

Utilizing that same considerable discretion in this case, it would be difficult for the Court to require specific performance of the previously-offered plea agreement, if only because the then-prosecuting AUSA, Robert Galvan, could not recall which count the government offered to allow Davis to plead to, and no other evidence on that point was provided to the Court during the evidentiary hearing. Moreover, the Court is concerned that *requiring* the government to allow Davis to plead guilty to only a single count without the enhancement, and without any adjustments for his later obstruction, might "unnecessarily infringe on competing interests," See Morrison, 449 U.S. at 364.

Rather, the Court concludes that the more tailored remedy would be to vacate Davis' conviction and sentence and to return the parties to the stage of plea negotiations. If either of the parties disagree with this remedy, they are free to ask the Court to reconsider its ruling and present authority or argument to the Court in support of a different remedy.

Regardless of whether Davis pleads guilty to one or both counts, and regardless of whether the enhancement is applied, there also arise questions as to whether, upon re-sentencing, he should

receive credit for acceptance of responsibility. As noted by the Fifth Circuit, the adjustment for acceptance of responsibility is not automatic. Grammas, 376 F.3d at 439 n.5. Nonetheless, that Grammas court also noted that a § 2255 movant in Davis' situation "should not then be deprived the reduction on the sole ground that he actually went to trial." Id.

Similarly, in this case, there is also the complicating factor that Davis' offense level was adjusted upward for obstruction of justice. This upward adjustment generally militates against acceptance of responsibility. See supra n. 7. In this case, however, the obstruction adjustment was based primarily on Davis' conduct at the motion to suppress hearing and at trial. Thus, if the § 2255 remedy is to return him to the position he would have occupied absent his counsel's ineffectiveness, it is at least arguable that he should not be given an obstruction of justice adjustment. The Court makes no findings on these issues at this time, but merely raises them and notes that the parties should be prepared to address these and any related issues at sentencing.

### B.     Remaining Claims

Davis' remaining grounds are allegations of ineffective assistance during trial and a claim that a Booker violation occurred at sentencing. The Court has already determined that his judgment of conviction and sentence should be vacated and that Davis should be entitled to the opportunity to plead guilty and be resentenced. Accordingly, any errors at trial or at the first sentencing in this matter are deemed moot. Accordingly, his remaining grounds are DENIED WITHOUT PREJUDICE as moot.

### V. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Davis' § 2255 motion to vacate as to his claim that he was denied effective assistance of counsel because his counsel failed to properly advise him of his sentencing exposure prior to trial. Davis' conviction and sentence are hereby

VACATED and his criminal case shall continue in accordance with this opinion. The Court DENIES his remaining claims WITHOUT PREJUDICE as moot.

It is so ORDERED this 6th day of September, 2006.

_____
Janis Graham Jack
United States District Judge